**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| ERIK GILSTRAP, individually and as Personal Representative of the Estate of JERRY S. GILSTRAP, Deceased, *et al.*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 19-309-MN-SRF |
| Plaintiffs, | | |
| v. | | |
| CBS CORPORATION, *et al.*, | | |
| Defendants. | | |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

Presently before the court in this asbestos-related personal injury action is the joint motion for summary judgment of defendants General Dynamics Corporation ("General Dynamics") and Electric Boat Corporation ("Electric Boat") (collectively, "defendants"). (D.I. 81) Plaintiffs Erik Gilstrap, Christopher Gilstrap, James Scott Gilstrap, Dawn Gilstrap, and Aaron Todd Gilstrap (collectively, "plaintiffs") did not respond to defendants' motion.[1] For the reasons that follow, the court recommends GRANTING defendants' motion for summary judgment.

---

[1] Defendants filed a joint opening brief in support of their motion for summary judgment on April 29, 2020. (D.I. 82) Plaintiffs' responsive brief was due on or before May 13, 2020, pursuant to D. Del. LR 7.1.2(b). Plaintiffs have not responded to defendants' motion. (D.I. 94)

## II. BACKGROUND

### a. Procedural History

On February 13, 2019, plaintiff Jerry S. Gilstrap ("Mr. Gilstrap") originally filed this personal injury action against multiple defendants, asserting claims arising from alleged harmful exposure to asbestos. (D.I. 1) On September 9, 2019, plaintiffs filed an amended complaint, which substituted Mr. Gilstrap's estate and alleged that Mr. Gilstrap had died from malignant mesothelioma on June 12, 2019, as a result of exposure to asbestos and asbestos-containing products. (D.I. 45)

### b. Facts

#### i. Mr. Gilstrap's alleged exposure history

Plaintiffs allege that Mr. Gilstrap developed severe and permanent injuries including, but not limited to, breathing difficulties, asbestosis, mesothelioma, lung and/or other cancer, and/or lung damage as a result of exposure to asbestos and asbestos-containing materials during his service in the U.S. Navy. (D.I. 45, Ex. B) Plaintiffs contend that Mr. Gilstrap was injured due to exposure to asbestos-containing valves that defendants manufactured, sold, distributed, licensed, or installed. (D.I. 45 at ¶ 31) In addition, plaintiffs allege that defendants owned, leased, maintained, managed, and/or controlled the "General Dynamics/Electric Boat" shipyard in Groton, Connecticut, where Mr. Gilstrap was present from 1975 through 1980 as he served onboard the *USS Omaha* and *USS Indianapolis*. (*Id.* at ¶ 46) Plaintiffs allege that Mr. Gilstrap was exposed to asbestos while working at defendants' Groton shipyard and that defendants failed to warn of or make safe hazardous conditions related to asbestos. (*Id.* at ¶¶ 46, 58) Accordingly, plaintiffs assert claims for strict liability, negligence, false representation, premises owner/contractor liability, and wrongful death and seek punitive damages. (D.I. 45)

Mr. Gilstrap served in the U.S. Navy from March 20, 1956, to June 30, 1980. (D.I. 82–1 at 254–55) Mr. Gilstrap worked as an engine room striker on the *USS Volador*, engine room operator on the *USS Robert E. Lee*, and trainee/trainer at the Nuclear Power School in Idaho Falls, Idaho. (*Id.* at 263–67) He also worked as an engine room supervisor on the *USS Sunfish* and the *USS Vallejo*. (*Id.* at 269–72) With the rank of master chief, Mr. Gilstrap was the engine room supervisor onboard the *USS Omaha*, until he was transferred to work onboard the *USS Indianapolis* as "Chief of the Boat from construction through to commissioning," until he was honorably discharged in 1980, after serving for more than twenty-four years in the U.S. Navy.[2] (*Id.* at 219:24–220:5, 225–30, 254–55, 273–75)

Plaintiffs allege various asbestos exposures throughout Mr. Gilstrap's service in the U.S. Navy. (D.I. 45) Mr. Gilstrap served onboard the *USS Volador* from 1956 to 1958. (D.I. 82-1 at 254–55, 263–65) During this time, he worked on pumps and valves, which exposed him to airborne debris. (*Id.* at 192:19–197:24) While serving on the *USS Robert E. Lee* from 1959 to 1964, Mr. Gilstrap observed insulation being installed, replaced asbestos packing, and worked on insulated pumps and valves where he cut into insulation an estimated eighty percent of the time. (*Id.* at 202:4–9, 205:7–210:9) He testified that he inhaled debris in the process of mixing the substance used to seal valves as well as cutting into the valve insulation. (*Id.* at 202:1–23, 205:20–206:5) From 1964 to 1967, Mr. Gilstrap was stationed at the Nuclear Power School in Idaho where he worked on insulated valves an estimated five or six times, cutting into insulation in the process. (*Id.* at 215:14–217:12, 265–66) He also testified that while working at the Idaho

---

[2] Plaintiffs allege in the amended complaint that the totality of Mr. Gilstrap's exposure relevant to the moving defendants occurred onboard the *USS Omaha* and the *USS Indianapolis* while the vessels were physically located at the "General Dynamics/Electric Boat" facility in Groton, CT, for construction and/or maintenance. (D.I. 45 at ¶ 46) The parties stipulate and agree that maritime law applies to all causes of action in this case. (D.I. 66) See discussion in section IV, *infra*.

facility he inhaled residue when his co-workers disturbed insulation on turbines and generators but could not recall how frequently this occurred. (*Id.* at 212:11–214: 12)

By the time Mr. Gilstrap worked on the *USS Omaha* in 1975, he was master chief and supervised the engineering department but was not doing much hands-on work. (*Id.* at 227:20–228:4, 240:20–25, 254–55) He oversaw the engine room and engineering spaces on the newly constructed vessel. (*Id.* at 218:1–7) Mr. Gilstrap testified that he and his crew did not install any insulation during his service onboard the *USS Omaha*. (*Id.* at 229:11–230:8) He did not recall having to instruct or supervise anyone removing or replacing packing or gaskets. (*Id.* at 241:6–13) Once the *USS Omaha* was commissioned, Mr. Gilstrap was transferred to the *USS Indianapolis* in 1977. (*Id.* at 218:1–13, 254–55)

Mr. Gilstrap served onboard the *USS Indianapolis*, also a newly constructed vessel, as master chief. (*Id.* at 230:9–21) While on the vessel, Mr. Gilstrap spent his time training and learning systems and learning various watch stations. (*Id.* at 231:2–6) He described himself as being "mainly a figure head" and stated that he had nothing to do with preparation or maintenance onboard the vessel. (*Id.* at 232:12–233:6) Mr. Gilstrap worked on the *USS Indianapolis* during sea trials and spent approximately three years on the vessel. (*Id.* at 218:15–219:23, 255, 275) He testified that he did not know whether the *USS Omaha* or *USS Indianapolis* had asbestos onboard. (*Id.* at 244:3–8)

Mr. Gilstrap did not recall being warned by anyone associated with the U.S. Navy about potential health hazards related to asbestos. (*Id.* at 220:9–24) He did not remember reading any warnings about health hazards related to asbestos in the consulting manuals he utilized over the course of his work in the U.S. Navy. (*Id.*) He also attested that he did not see any warnings on equipment he worked on in the U.S. Navy related to asbestos. (*Id.*) To his knowledge, during

his time working for the U.S. Navy, he used only materials that fell under military specifications and were approved by the U.S. Navy. (*Id.* at 222:16–24, 245:10–12)  Therefore, he assumed that any insulation on a vessel was approved by the U.S. Navy. (*Id.* at 245:13–16)  In addition, Mr. Gilstrap testified that the Atomic Energy Commission did constant inspections of ships as they were constructed, including the *USS Omaha* and *USS Indianapolis*. (*Id.* at 224:22–225:13)

Mr. Gilstrap left the *USS Indianapolis* in 1980. (*Id.* at 221:11–16, 255)  After retiring from the U.S. Navy, he worked at a nuclear facility in Ohio from 1980 to 1985 and a nuclear power plant in Texas from 1985 to 1995. (*Id.* at 221:17–23)  He was diagnosed with malignant mesothelioma on or about October 2, 2018. (D.I. 45, Ex. B)  Mr. Gilstrap died from malignant mesothelioma on June 12, 2019. (*Id.*)

During the period in question, General Dynamics owned and operated an Electric Boat division in Groton, Connecticut, which acted as a government contractor for the U.S. Navy. (D.I. 82–1 at 290, 292)  This General Dynamics-owned division oversaw the construction and maintenance of the *USS Omaha* and *USS Indianapolis* when Mr. Gilstrap worked onboard these respective vessels. (*Id.* at 292)  Electric Boat acquired all assets and liabilities of the General Dynamics division in 1995. (*Id.*)

### ii. Plaintiffs' product identification evidence relevant to defendants

Mr. Gilstrap was deposed for a separate proceeding[3] on January 8, 2019, where he discussed his various assignments and duties with the U.S. Navy. (D.I. 82–1 at 188–247)  Mr. Gilstrap testified that Crane valves were present on the *USS Omaha* and *USS Indianapolis*, but he did not believe that he worked hands-on with these valves. (*Id.* at 245:22–25, 246:3–7)  He saw Johns Manville insulation materials throughout his service in the U.S. Navy; however, he

---

[3] *Jerry S. Gilstrap v. Air & Liquid Systems Corporation, et al.*, Case No. DC-18-17064 in Dallas County, Texas District Court. (D.I. 82–1 at 189–247)

5

did not specify that these materials were used during his time onboard the *USS Omaha* or *USS Indianapolis*. (*Id.* at 239:14–16) He identified IMO pumps on the *USS Omaha* but did not recall supervising anyone repairing this equipment. (*Id.* at 241:6–13) He did not identify any asbestos-containing products or exposure to materials that may have contained asbestos while serving onboard the *USS Indianapolis*. (*Id.* at 275)

Mr. Gilstrap's shipmate in the U.S. Navy, Hewey Smith ("Mr. Smith"), was deposed on October 30, 2019, as a fact and product identification witness for this case. (*Id.* at 280–88) However, Mr. Smith did not provide any testimony regarding Mr. Gilstrap's service onboard the *USS Omaha* or *USS Indianapolis*. (*Id.*)

### III.   LEGAL STANDARD

#### a.   Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the nonmoving party to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458,

460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007).  An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *Anderson*, 477 U.S. at 247–49.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322.  If the non-movant fails to make a sufficient showing on an essential element of their case on which they bear the burden of proof, then the movant is entitled to judgment as a matter of law.  *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2)–(3).  A plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).  Even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a

matter of law. *See Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the court must still determine whether the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.*, 2014 WL 3783878, at *2 (D.N.J. July 31, 2014) (quoting *Muskett v. Certegy Check Servs., Inc.*, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)).

### b. Maritime Law: Substantial Factor Causation

The parties agree that maritime law applies to all issues in this case. (D.I. 66) In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor[4] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness

---

[4] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[5] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

## IV. DISCUSSION

The court recommends granting defendants' motion for summary judgment. There is no genuine issue of material fact in dispute as to whether defendants' products were a substantial factor in causing Mr. Gilstrap's injuries, as required by maritime law. Plaintiffs provided no evidence of identification of any product manufactured, distributed, or supplied by defendants, and Mr. Gilstrap has failed to identify exposure to any of defendants' products.

In addition, the evidence fails to establish the "frequency, regularity, or proximity" of Mr. Gilstrap's exposure to asbestos while serving onboard the *USS Omaha* and *USS Indianapolis* at defendants' shipyard facility in order to create a genuine issue of material fact regarding substantial factor causation as to the moving defendants. *See Thomasson v. Air & Liquid Sys.*

---

[5] However, "*substantial* exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury." *Stark*, 21 F. App'x at 376 (emphasis in original) (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).

9

*Corp.*, 2015 WL 1639730, at *4 (D.N.J. Apr. 9, 2015). Plaintiffs have not raised any arguments in opposition nor pointed to any evidence in the record to demonstrate any basis on which to deny defendants' motion. The lack of any evidence of asbestos exposure for which moving defendants could be held liable warrants the recommendation for granting defendants' motion for summary judgment and dismissing plaintiffs' claims against them with prejudice.

## V. CONCLUSION

For the foregoing reasons, the court recommends GRANTING defendants' motion for summary judgment, with prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January 13, 2021

_____
Sherry R. Fallon
United States Magistrate Judge